IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>    Plaintiff,<br><br><br><br>vs.<br><br><br><br>STEPHEN BROCKBANK, CAROL LOVE, et al.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER IMPOSING PERMANENT INJUNCTIVE RELIEF, RESTITUTION, DISGORGEMENT, AND CIVIL MONETARY PENALTIES<br><br><br><br><br><br><br>Case No. 2:00-CV-622 TS |

I. INTRODUCTION

The Commodity Exchange Act (the Act) makes three forms of relief available to the Commodity Futures Trading Commission (CFTC) for violations of the Act and its implementing regulations. The jury determined that Defendants Birma, Ltd. (Birma) Stephen Brockbank (Brockbank), Carol Love (Love), GAHMA Corporation (Gahma), and

Donald Purser[1] (Purser) violated the Commodities Exchange Act (Act) and its implementing regulations.  As to each Defendant, the CFTC seeks a permanent injunction prohibiting further violations of the Act, ancillary equitable relief in the form of restitution and disgorgement, and civil monetary penalties.  Pursuant to the duly rendered jury verdict, the Court considers that for every claim for which the Jury found a violation, every element of that claim is proven.  Based upon the entire record in this case, the Court imposes the following remedies.

## II.  PERMANENT INJUNCTION

"Upon a proper showing," this Court may enter a permanent injunction to enforce compliance with the Act and any rule, regulation or order thereunder.[2]

> In order to be entitled to injunctive relief, [the CFTC must] show a reasonable likelihood that [a defendant] would violate the Act in the future.  The factors to be considered are "the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations."[3]

"While past misconduct does not lead necessarily to the conclusion that there is a likelihood of future misconduct, it is 'highly suggestive of the likelihood of future

---

[1] Purser was charged with five violations of the Act and the Jury found one violation.

[2] 7 U.S.C. § 13a-1.

[3] *CFTC v. Risk Capital Trading Group, Inc.*, 452 F.Supp.2d 1229, 1247 (N.D. Ga. 2006) (quoting *SEC v. Ginsburg*, 362 F.3d 1292, 1304 (11th Cir. 2004) (citation and quotation omitted).

violations.'"[4]  Once the showing is made of a reasonable likelihood of future violations, the CFTC need not meet the traditional requirements for an injunction such as a threat of irreparable harm.[5]

The Court finds that the CFTC has made a proper showing that each Defendant should be permanently enjoined.  The Court notes that Love does not object to a permanent injunction against trading and Gahma consents to the permanent injunction sought by the CFTC.

The Court finds that for Brockbank, Birma, Love, Purser, and Gahma, the conduct was egregious and systemic.  Although Love argues, as she did at trial, that she was merely duped into inadvertent violations, the jury rejected that explanation.  The evidence at trial showed, among other things, Love's full participation in the scheme, that her actions enabled the scheme to continue, that she violated the asset freeze, and that the CFTC had to bring a contempt proceeding to obtain an accounting from Love.  Similarly, while Gahma argues that its violations were the result of actions of two of its agents, the jury found that Gahma violated Sections 4b(a)(iii) and 4m(1) of the Act and Commission Regulation 4.21.  Gahma also acted to keep the fraud from its investors for a full year.  The Jury's verdict determined scienter for the violations.  None of the Defendants have exhibited any recognition of the wrongfulness of their conduct.  Instead, they continue to minimize and

---

[4] *CFTC v. Rosenberg*, 85 F.Supp.2d 424, 454 (D. N.J. 2000) (quoting *CFTC v. Hunt*, 591 F.2d 1211, 1219 (7th Cir. 1979) (quoting *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975)).

[5] *Hunt*, 591 F.2d at 1220.

make excuses for their conduct, placing blame elsewhere.  Even Brockbank, the architect of and primary actor throughout the fraud, continues to minimize his conduct.  "The fact that a violator has continued to maintain that his conduct was blameless has prompted several courts to look favorably on injunctive relief."[6]  The Court need not reiterate the long history of Brockbank's pervasive fraud and failure to account for investor funds.  His willfully contumacious behavior, well documented in this case, establishes that he is highly likely to commit future violations because he has never yet accounted for the investor funds entrusted to him.  Brockbank's central role in the violations is well established and, as shown by both his past conduct and his remarks at the sanctions hearing, it is highly likely he would violate the Act in the future.  Because Gahma and Birma are in the business of making similar investments, the likelihood of their violating the Act in the future is high. While Love's occupation may not provide many opportunities for violations in the future, the CFTC has shown that, based upon the factors, it is reasonably likely that she would violate the Act in the future.  Purser also continues to deny any violation of the Act and, therefore, fails to recognize the wrongful nature of his conduct.  The evidence at trial showed that Purser's actions were not isolated incidents.  The evidence showed that his actions were not, as he continues to argue, a casual referral, but were part of an ongoing written agreement that he would bring investors to Birma for compensation. Purser continued to press for payments from Birma for bringing in investors[7] even after he knew

---

[6] *Hunt*, 591 F.2d at 1120.

[7] *See* Exs. 148, 149, and 150.

4

of the asset freeze.[8]  His occupation as an attorney dealing with estate planning presents opportunities for future violations.  The Court finds that the CFTC has shown a reasonable likelihood that Purser would violate the Act in the future.

The Court, having found that the CFTC has shown a reasonable likelihood that Brockbank, Love, Purser, Birma, and Gahma would violate the Act in the future, finds that the CFTC has made a proper showing for a permanent injunction and concludes that permanent injunctive relief is warranted. Accordingly, the Court will permanently enjoin Brockbank, Love, Purser, Birma, and Gahma from committing any further violations of the Act, either directly or indirectly.  The CFTC shall prepare the form of such injunction prohibiting violations of the Act in conformity with the relief sought in their Second Amended Complaint.[9]

### III.  ANCILLARY EQUITABLE RELIEF

A. Restitution

"As the Act expressly authorizes the Court to provide the equitable remedy of an injunction in 7 U.S.C. § 13a-1, the Court has the authority to award 'ancillary equitable

---

[8] *See* Ex. 151 (October 2, 2000 letter from CFTC to Purser notifying him of Brockbank, Love, and Birma asset freeze).

[9] Docket No. 203.

relief,' including restitution."[10]   The purpose of restitution is to "restore the status quo and order[ ] the return of that which rightfully belongs to" the investors.[11]

The Court finds that restitution is an appropriate remedy for Brockbank, Love, Birma, and Gahma.  Love argues that no remedy, including restitution, should be imposed against her because she did not profit and has no ability to pay.  The evidence shows that she did have a net financial gain.[12]  Further, restitution, unlike disgorgement, "is measured by the amount invested by customers less any refunds made by the defendants."[13]  The evidence at trial was clear that Love's actions, including submitting false statements regarding the Brima investor funds and acting to impede the repatriation of investor funds held in offshore accounts, played a major role in the losses suffered by the Birma investors.  As noted above, the jury rejected her arguments regarding her lack of responsibility for the violations.  The evidence at trial and at the hearing on sanctions established that the appropriate amount of restitution imposed for Brockbank, Love, and Birma should be $1,237,874.97—the amount of the lost investments.[14]  Brockbank, Love, and Birma shall be jointly and severally liable for that amount.

---

[10] *Risk Capital*, 452 F.Supp.2d at 1247–48; accord *Rosenberg*, 85 F.Supp.2d at 455 (requiring defendants to pay restitution); *CFTC v. Nobel Wealth Data*, 90 F.Supp.2d 676, 692–93 (D. Md. 2000) *aff'd in part and vacated in part*, 278 F.3d 319 (4th Cir. 2002) (imposing restitution).

[11] *Nobel Wealth*, 90 F.Supp.2d at 693 (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946) (holding that restitution is within court's equitable jurisdiction)).

[12] Ex. 160.

[13] *Nobel Wealth,* 90 F.Supp.2d at 693.

[14] *See* Ex. 25 (net Birma customer losses after final distribution).

Gahma also argues that it did not make a profit and was, instead, merely a victim of Brockbank's fraud.  The Jury's return of a verdict in favor of Gahma on three of the six claimed violations reflects that the Jury carefully separated actions for which Gahma was not liable, but that it nonetheless found that Gahma violated sections 4b(a)(iii) and 4m(1) of the Act and Commission Regulation 4.21.  As noted above, restitution is not based on any profit to Gahma, but on the amount of its investors' losses.  In calculating those losses Gahma seeks to restrict any restitution to only those investors who testified at trial.  However, the evidence at trial, and the hearing was of greater losses and established that the appropriate amount of restitution for Gahma is $364,672.15.

The CFTC also seeks pre- and post judgment interest.

> "Under federal law, the rationale underlying an award of prejudgment interest is to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of [the] judgment."  Prejudgment interest is therefore "ordinarily awarded, absent some justification for withholding it."  Nonetheless, prejudgment interest is not recoverable as a matter of right.  Rather, the district court must first determine whether an award of prejudgment interest would serve to compensate the wronged party.  If the court determines the award of interest would serve this purpose, the court must then determine whether the equities preclude such an award.[15]

The Court finds that an award of prejudgment interest is necessary to compensate the investors for the monetary value and time of their losses.  The Court finds that the equities do not preclude an award of prejudgment interest.  Accordingly, the Court finds

---

[15] *Suiter v. Mitchell Motor Coach Sales, Inc.*,  151 F.3d 1275, 1288–89 (10th Cir. 1998) (affirming award of prejudgment interest on damage award for violation of Motor Vehicle Information and Cost Savings Act) (quoting  *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1256–57 (10th Cir. 1988), *implied overruling on other grounds recognized by Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir.1996)).

that prejudgment interest is appropriate.[16] The CFTC shall submit a proposed order setting forth the calculation of prejudgment interest for the amounts of restitution awarded. Post judgment interest shall be at the rate set by law.

B.  Disgorgement

The CFTC also seeks disgorgement for Brockbank, Love, and Purser. Like restitution, disgorgement is a remedy within the Court's equitable powers.[17] The "disgorgement remedy is intended to deprive the violator of his ill-gotten gains and to further the deterrence objectives of the [Act]."[18]

The evidence is that Brockbank used over $300,000 of Birma funds for personal expenses.  The Court will order disgorgement of that amount.

The evidence is also that Love, unlike other investors, received her investment back in full plus $28,000 in monetary gain.  She will be ordered to disgorge $28,000. The Court will order that Brockbank's and Love's restitution obligations be paid in full prior to application of funds to disgorgement.

Purser contends that he should not be required to disgorge his net monetary gain because the payments from Birma were paid to his law firm rather than to him in his individual capacity.  The Court notes that some of the checks and transfers from Birma

---

[16]*Noble Wealth*, 90 F.Supp.2d at 695 n.3 (awarding pre and post judgment interest on restitution award).

[17]*CFTC v. Skorupskas*, 605 F.Supp. 923 (E.D. Mich. 1985) ("courts have uniformly recognized that the authority granted by [§13a-1] permits court to order . . . , disgorgement, and restitution.").

[18]*Rosenberg*, 85 F.Supp.2d at 455.

8

were to Purser individually rather than to his law firm.[19]  The evidence was that Purser personally, or through his law firm, received a net profit.  However, in light of the payments in the name of his law firm, the Court will not order disgorgement as to Purser.

## IV.  CIVIL MONETARY FINE

Section  § 13a-1(d)(1) of the Act provides that "upon a proper showing," the Court may impose a civil penalty in the amount of "not more than the higher of $110,000 or triple the monetary gain to the person for each violation."[20]  "Monetary gain" is not "identical to 'illegal profits' associated with disgorgement and certainly comprehends an individual's salary and commissions."[21]  "Civil penalties should be imposed to act as a deterrent, but should be proportional to the gravity of the offenses committed.  However, the maximum civil penalty 'is limited by the number of violations alleged in the complaint times the maximum fine per violation.'"[22]  The Court is mindful of "its duty to be realistic and not set a figure which is impossible for a defendant to comply with due to lack of monetary resources."[23]

---

[19] *See* Ex. 142.

[20] 7 U.S.C. § 13a-1 (2000).  This version of the statute was in effect when this case was filed and controls this case.

[21] *Nobel Wealth*, 90 F.Supp.2d at 694.

[22] *CFTC v. Gibraltar Monetary Corp., Inc.*,  2006 WL 1789018, at *27 (S.D. Fla. 2006) (quoting *Slusser v. CFTC*, 210 F.3d 783, 786 (7th Cir. 2000)).

[23] *Commodities Futures Trading Com'nn v. Heffernan*, 274 F.Supp.2d 1375, 1378 (S.D. Ga. 2003) (quoting *Rosenberg*, 85 F.Supp.2d at 455)).

Among the factors to be considered in setting the fine are the following: the seriousness of the violations as determined by the relationship of the violation to the regulatory purpose; whether the violation was "an isolated 'mistake' arising from an ambiguous statutory duty or from circumstances that are unique and unforeseeable;" "the particular mitigating or aggravating circumstances presented by the unique facts of the individual conduct at issue;" any benefit to the violator; any harm to the investors; any attempt to cure the violations; "post violation conduct;" cooperation with authorities; and any attempt to provide restitution.[24]

Considering these factors, the Court finds that all of them point to the imposition of the highest possible civil fine against Brockbank. The seriousness of his violations goes to the heart of the regulatory purpose—prevention of the type of fraud in which he repeatedly and continuously engaged. The short list of aggravating factors for Brockbank include his flagrant, repeated, and systemic violations, his refusal to obey the preliminary injunction, his violation of the asset freeze, his using large sums of investor money as his own, his refusal to return or account for the large amount of investor money he moved offshore, his hiding assets, his destroying evidence, and his total lack of cooperation with and actual obstruction of the CFTC. Also, contrary to his current story that the violations were a result of misunderstanding of registration requirements, the Court notes that his violations were of statutory and regulatory requirements that are unambiguous. Contrary

---

[24]*JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995) (quoting Commissioner's statements in *In re Premex, Inc.*, [1987-1990 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 24,165 at 34,892 to 34,893 (CFTC Feb. 17, 1988)).

to Brockbank's oft-repeated desire to repay investors, he has used investor money as his own, transferred a major portion of the investor funds off-shore, and refuses to account for those funds or to cooperate in their repatriation. Based upon the entire record in this case, the Court finds Brockbank's continuing position that he cannot retrieve those funds to be entirely without credibility.  For this reason, the Court finds unbelievable his position that he cannot pay restitution, disgorgement, and a civil penalty.  The Court finds that Brockbank shall pay  to the CFTC a civil monetary penalty in the amount of $990,000, based upon the maximum amount of $110,000 for each violation. Brockbank shall pay the civil monetary penalty upon full satisfaction of his restitution and disgorgement obligations.

The Court finds that in view of the prior restitution and disgorgement remedies already imposed and her inability to pay a civil fine, that no civil fine will be imposed as to Love.

As to Purser, the Court finds that his violation—soliciting commodities investments while unregistered—is serious because his failure allowed him to operate outside of the statutory regulatory scheme to the detriment of investors.  The harm to investors was substantial. Purser solicited nearly half of Birma's limited partners, who collectively lost over half of their investments.  Purser's violation was not an isolated mistake, it was the result of his refusal to accept that the requirement applied to his solicitations—a position he continues to maintain.  Purser benefitted from commissions he or his law firm received based on the investments he solicited for Birma.  There was no attempt to cure his violation or provide restitution.  As noted above, his post violation conduct consisted of attempts to collect from Birma despite actual knowledge of its asset freeze.  The Court

finds the CFTC has made a proper showing and will impose the maximum civil monetary fine of $110,000 for Purser's violation.

## V.  CONCLUSION AND ORDER

Based upon the foregoing it is therefore

ORDERED that Brockbank, Love, Purser, Birma, and Gahma are permanently enjoined from committing any further violations of the Act, either directly or indirectly.  It is further

ORDERED that Defendants Brockbank, Love, and Birma shall pay restitution in the amount of $1,237,874.97, jointly and severally, plus prejudgment interest and post judgment interest at the rate set by law. It is further

ORDERED that Defendant Gahma shall pay restitution in the amount of $364,672.15, together with prejudgment interest and post judgment interest at the rate set by law.  It is further

ORDERED that Brockbank shall pay $300,000 in disgorgement.  It is further

ORDERED that Love shall pay $28,000 in disgorgement.  It is further

ORDERED that Brockbank shall pay to the CFTC a civil monetary penalty in the amount of $990,000.  It is further

ORDERED that Purser shall pay to the CFTC a civil monetary penalty in the amount of $110,000.   It is further

ORDERED that pursuant to Local Rules of Practice, counsel for the CFTC shall prepare and submit the form of a proposed Judgment and Permanent Injunction.  It shall

provide that no funds shall be applied to the civil monetary penalty until a defendant has fully satisfied first their restitution obligation and second their disgorgement obligation.

DATED April 9th, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge